# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
Dec 16, 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| United States of America | ) | |
|---|---|---|
| v. | ) | |
|  | ) | Case No. 2:20-mj-0190-DB |
| **Darren Tramaine Tony Mitchell and Ronald John Garnes** | ) | |
|  | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 15, 2020 in the county of Solano in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| **Both Defendants**: 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute at least 500 grams of a mixture and substance containing methamphetamine |
| **Mitchell**: 18 U.S.C. Section 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s. Brian Nehring
*Complainant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date: 12/16/2020

City and state: Sacramento, California

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004.

2. This Affidavit is submitted in support of a Criminal Complaint charging **Darren Tramaine Tony MITCHELL** and **Ronald John GARNES** with possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). This affidavit is also made in support of charging **MITCHELL** with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g).

## PROBABLE CAUSE

3. Starting in 2020, I conducted an investigation into the drug trafficking activities of Darren Tramaine Tony MITCHELL, whom I determined resided at 162 Kemper Street, Vallejo, California. I received information from multiple Sources of Information (SOIs) that MITCHELL was manufacturing and distributing multiple thousand count quantities of methamphetamine tablets throughout the Eastern District of California. I also received information that MITCHELL was using the residence at 162 Kemper Street, Vallejo, California as a location to manufacture these tablets and that he possessed firearms at this residence. Based upon this investigation, on December 14, 2020, the Honorable Magistrate Judge Deborah Barnes authorized a search warrant for the residence at 162 Kemper Street, Vallejo, California to search for items associated with violations of Title 21 U.S.C. §§ 841(a)(1) and 846, Distribution and Conspiracy to Distribute and Possess with Intent to Distribute methamphetamine.

1

4. On the morning of December 15, 2020, agents executed the search warrant at 162 Kemper Street, Vallejo, California. Upon knocking and announcing the presence of law enforcement, and receiving no response, agents began to make forced entry into the residence through the front door.  As this was taking place, agents observed Darren MITCHELL attempt to crawl out the window of the rear left bedroom of the residence. Upon being confronted by agents, MITCHELL did not comply with officer's instructions to remain where he was and he retreated back through the window into the residence.

5. Agent entered the residence and located an individual subsequently identified as Ronald GARNES in the first hallway bedroom as well as GARNES' common-law wife and infant daughter. Agents subsequently located MITCHELL in the rear left bedroom at the end of the hallway along with his girlfriend and her infant daughter. No other individuals were located inside the residence.

6. Upon entering the rear right bedroom at the end of the hallway (directly across from the room where MITCHELL was located) agents immediately observed what appeared to be an active methamphetamine tablet manufacturing operation throughout the room. This included over one kilogram of multi-colored tablets (multiple thousand count quantities) bearing different images and emblems (Superman, Batman, Pistols, etc.).  A sample of these pills tested presumptively positive for methamphetamine. Agents also found multiple plastic container bowls filled with over one kilogram of tan, red, and green powder, which also tested presumptively positive for methamphetamine.  Near the pills and powders, agents located numerous machined metal tablet and die punches bearing images identical to those on the pills and all bearing powdery residue. They also found gloves, masks, and work surfaces covered in a powdery residue throughout the room. This room appeared to be used solely for this manufacturing operation.



7. In the hallway of the residence on a shelf directly above the washer and drier units, I observed in plain sight numerous plastic containers, electric blenders, accompanying plastic blender cups and digital scales and spoons that contained multi-colored powdery residue consistent with the bowls of powder and pills located in the rear right bedroom manufacturing room. During a search of the kitchen, I located a manual pill press with powdery residue under the sink. In the corner of the kitchen, on a wooden pallet, I located a MINSHENG PHARMACEUTICAL MACHINERY CO. LIMITED TDP-1.5-T SINGLE PUNCH 250LB electric tableting machine.



8. I spoke to all the adults in the front room of the residence and displayed a copy of the search warrant and explained why agents were present at the residence. I subsequently spoke to GARNES in the room where he had been located.  During a recorded interview, I read him his *Miranda* rights, and he indicated he was willing to speak to me. He indicated this was his room. While I was speaking with him, I observed in plain sight thirty bottles labelled Caffeine stacked just to the right of his bed (in excess of two kilograms). I told him it looked bad that he had so much Caffeine in plain sight in his room. GARNES told me in summary that he lived at this residence and had rented the rear left and rear right bedrooms to MITCHELL for $1200 per month.

9. GARNES indicated that he knew that MITCHELL was making pills and that he had obtained the Caffeine for MITCHELL to use in manufacturing the pills. While I was talking to him, I opened the top drawer of the dresser next to his bed and immediately observed two large clear plastic knotted bags containing similar multi-colored tablets (approximately 420 gross grams). GARNES stated that he knew the pills were there and that MITCHELL did not want his girlfriend to see them in their room so he kept them there.  I opened the dresser drawer beneath this and observed a black plastic bag containing a large plastic bag further containing a white crystalline substance completely consistent in my training and experience with crystalline methamphetamine (491 gross grams).  GARNES stated that this was the "ingredient" that was put in the pills.  GARNES further related that he had previously been incarcerated for over 14 years for an Attempted Murder conviction. GARNES stated that despite knowing of and assisting with the methamphetamine pills manufacturing

4

activities, GARNES did not possess and was not aware of any firearms present in the residence.



10. During a search of the left rear bedroom where MITCHELL had been located, agents found indicia (envelopes, mailers, bills, identification) in the name of MITCHELL throughout this room to include the closet and the dresser. Inside the dresser, agents located numerous rifle and pistol ammunition magazines as well as various types of pistol and rifle ammunition corresponding to the magazines. In this same dresser, agents located another blender cup containing the same powder wrapped in a plastic bag; a blue cloth Nike mask bearing powdery residue; a hammer bearing powdery residue; and a digital scale bearing powdery residue. I noted that there were many Glock pistol magazines and a Glock Pistol box in this dresser. In the manufacturing room, directly across from this room, I had located a plastic Glock pistol ammunition loader that was coated with powdery residue on the shelf directly above the bowls containing the mixed powder and dies. MITCHELL subsequently indicated that the left rear bedroom in fact belonged to him and he requested items of clothing and shoes from the room.

11. I subsequently spoke to MITCHELL during a recorded interview. I advised him he was under arrest and read him his *Miranda* rights. MITCHELL indicated that he did not have anything to say and was ready to go to jail. MITCHELL asked me several times who was "snitching" on him. I asked MITCHELL if he threw any firearms out

5

the window as he was attempting to flee, noting my concern that members of the public could find such weapons. MITCHELL said he had not.

12. Shortly thereafter, during a search of the kitchen, agents found in the dishwasher an Anderson Arms AR-15 rifle with a loaded high-capacity magazine with one round in the chamber and as a .40 caliber Smith and Wesson pistol that was also loaded with a round in the chamber. After these firearms were located, MITCHELL requested to speak to me. MITCHELL told me that there was an AR15 rifle and a Smith and Wesson pistol in the dishwasher and that he possessed the firearms and that GARNES was not aware that they had been there and had nothing to do with them. MITCHELL assured me that he was not going to fight his case and just wanted to go do his time, and reiterated that he was offended how many people he believed had snitched on him.




13. I am aware from conversations with ATF that the firearms in the dishwasher were manufactured outside California.

14. Inquiries with the National Criminal Information Center (NCIC) revealed that MITCHELL had a criminal history as an adult including, but not limited to, a 2008 felony conviction in Alameda County for Possession of Cocaine Base for Sale; a 2011 felony conviction in Alameda County for Possession of Cocaine Base for Sale;

6

a felony conviction in 2012 in Contra Costa County for Possession of a Controlled Substance; a felony conviction in 2012 in Solano County for Felon in Possession of a Firearm; a felony conviction in 2012 in Solano County for First Degree Burglary; and a 2015 felony conviction in Sacramento County for Possession of a Controlled Substance for Sale resulting in a 4 year prison commitment. I also noted that MITCHELL had multiple separate and unrelated arrests at various times for firearms possession offenses (felon in possession of a firearm; carrying a concealed firearm in public; possession of a controlled substance and a firearm; etc.) which resulted in multiple parole and probation violations.

15. Inquiries with the National Criminal Information Center (NCIC) revealed that GARNES had a criminal history as an adult including, but not limited to a felony conviction in 1996 in Solano County for Possession of a Controlled Substance; a felony conviction in 1998 in Solano County for Possession of Cocaine Base for Sale; arrests in 1999 in Solano County for Lewd or Lascivious Acts with a Child Under 14 and Murder and subsequent felony convictions in 1999 for Attempted Murder, Assault with a Deadly Weapon on a Police Officer, Shooting at an Occupied Dwelling and Attempted Murder with a Firearm, which resulted in a sentence of 17 years in prison.

[Continued on the next page.]

16. I request that based upon this Affidavit, a Criminal Complaint and Arrest Warrants be issued for **Darren Tramaine Tony MITCHELL** and **Ronald John GARNES** charging them with possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), and charging MITCHELL with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g).

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

\_\_/s/ Brian Nehring_____

Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me telephonically on the __16__ day of December 2020.

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

Cameron Desmond
Assistant U.S. Attorney

8